1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    DAVID M. LEWIS, D.M.D., et al.,              Civ. No.  S-13-0574 KJM EFB

12              Plaintiffs,

13        V.                                       ORDER

14    WILLIAM MICHAEL STEMLER, INC.,
      et al.,
15
                 Defendants.
16

17
               Plaintiffs' motion to stay proceedings pending a criminal investigation against
18
      plaintiff David Lewis is currently before the court.  The court heard argument on January 17,
19
      2014.  Eric Brenneman and Craig Farmer appeared for plaintiffs; John Provost appeared for
20
      defendants William Michael Stemler, Inc. dba Delta Health Systems ("Delta") and Northern
21
      California General Teamsters Security Fund ("Fund") (collectively "defendants").  After
22
      considering the parties' argument, the court GRANTS the motion in part and DENIES it in part.
23
      I.  BACKGROUND
24
               In a first amended complaint ("FAC") filed August 15, 2013, plaintiffs David M.
25
      Lewis, D.M.D., individually ("Lewis") and David M. Lewis, D.M.D., Inc. ("Corporation";
26
      collectively "plaintiffs") challenge the defendants' alleged failure to pay for dental services
27
      rendered under the Teamsters' dental plan.  Plaintiffs brought nine claims for relief:  (1) recovery
28

                                                   1

of ERISA benefits, 29 U.S.C. § 1132(a)(1)(B); (2) breach of implied contract; (3) breach of an oral contract; (4) quantum meruit; (5) open book account; (6) unjust enrichment; (7) violation of California Health & Safety Code § 1371; (8) violation of California Health & Safety Code § 1371.35; and (9) violation of California's Unfair Competition Law (UCL), CAL. BUS. & PROF. CODE §§ 17200, *et seq.*  ECF No. 9.

Defendants moved to dismiss plaintiffs' state law claims, arguing they are preempted by Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  ECF No. 12.  The court granted defendants' motion as to plaintiffs' second, third, fourth, fifth, sixth, seventh and eighth claims and also granted it as to the ninth claim, insofar as that claim was based on a violation of California Health & Safety Code §§ 1371 and 1371.5, but denied the motion insofar as the ninth claim alleged that defendants' actions were unfair.  ECF No. 18.

On September 27, 2013, the Fund filed a counterclaim against Lewis and David Lewis D.M.D., Inc., alleging that sometime in 2007 Lewis began performing dental procedures on Fund members and discovered the benefits under the plan were more generous than most plans. ECF No. 19 ¶ 7.  Thereafter Lewis began to solicit Fund members by offering cash payments for referrals; he ultimately performed dental services that were not medically necessary on plan members and misrepresented that dental work had been performed when in fact it had not been. *Id*. ¶ 9.  Between 2007 and 2012, counterdefendants billed the Fund $2,500,000 for services to Plan members and beneficiaries, representing the services were medically necessary and appropriate; the Fund relied on these representations to pay the claims.  *Id*. ¶ 10.  The Fund alleges upon information and belief that many of the services were not medically necessary or were not provided.  *Id*. ¶ 11.  The counterclaim then describes services the Fund believes were either not performed or not necessary but for which counterdefendants billed and the Fund paid. The Fund, as counterclaimant, brings the following claims:  (1) a violation of the Racketeering and Corrupt Organizations Act ("RICO") against Lewis only; (2) a RICO violation against both counterdefendants; (3) common law fraud against both counterdefendants; (4) a UCL violation against both counterdefendants.  *Id.* ¶¶ 18-31.

/////

1    Plaintiffs filed their Second Amended Complaint ("SAC") on October 10, 2013.

2  ECF No. 23.  They allege the Fund operates a health plan that includes dental benefits for

3  individual plan members under terms of their contract with the Fund.  Complaint, ECF No. 22

4  ¶ 10.  Delta administers the health plan and processes and pays claims submitted by dental

5  providers who have treated plan members.  *Id*. ¶ 12.  Lewis, an out-of-network provider under the

6  Teamsters' plan, provided dental services to individual plan members, who assigned their

7  contractual rights under the health plan to plaintiffs.  *Id*. ¶¶ 13-14.  After treating plan members,

8  plaintiffs submitted claims for the reasonable and customary rate for services to Delta, but Delta

9  failed timely to respond to the claims; unreasonably denied the claims; failed to provide proper

10 information; requested information not required by the claim procedures and promised claims

11 would be paid if plaintiffs provided this information, but thereafter denied the claims and/or failed

12 to pay the required contractual benefits under the plan.  *Id*. ¶ 16.  They allege two claims for

13 relief:  (1) recovery of ERISA benefits, 29 U.S.C. § 1132(a)(1)(B) and (2) violation of

14 California's Unfair Competition Law (UCL), CAL. BUS. & PROF. CODE §§ 17200, *et seq*.

15    On October 24, 2013, defendants filed an answer, raising numerous affirmative

16 defenses.  ECF No. 25.

17    On November 8, 2013 plaintiffs filed an answer to the counterclaim.  ECF No. 27.

18 In that answer, plaintiff Lewis asserted his right against self-incrimination and so declined to

19 answer many of the allegations.  ECF No. 27.

20    The parties' evidence in support of and opposition to the current motion shows the

21 following:  In October 2011, an investigator for California's Dental Board contacted John

22 Provost, the Fund's lawyer, in connection with an investigation of plaintiffs' possible fraud

23 against the Fund.  Decl. of John Provost, ECF No. 33 ¶ 2.  Also in October 2011, Provost

24 received a letter from Jamidi Daiess, an investigator for the United States Department of Labor

25 ("DOL"), requesting Fund documents related to Lewis's provision of dental services to Fund

26 participants.  *Id*. ¶ 3.  In November 2011, the Dental Board served a search warrant on Provost,

27 also seeking records related to Lewis.  *Id*.

28 /////

1      In February 2012, the Dental Board's Administrative Law Judge (ALJ) held a

2  hearing seeking an interim suspension order against Lewis based on an accusation alleging Lewis

3  had billed the Fund for unnecessary dental work performed on Fund participants or for

4  procedures he had not performed at all.  *Id*. ¶ 4.  The ALJ issued an interim suspension order

5  pending a full evidentiary hearing on revocation of the license.  *Id*.  The full evidentiary hearing

6  before the Dental Board, scheduled for August 2012, was cancelled when Lewis surrendered his

7  license to practice in California.  *Id*. ¶ 6.

8      In December 2012, Provost provided Fund records about Lewis and his treatment

9  of Fund participants to the United States Attorney's Office ("USAO") for this district.  *Id*. ¶ 7.

10  Provost received another subpoena from the United States Attorney's Office in May 2013.  *Id*.

11      After this motion was submitted, Lewis was indicted on one count of conspiracy to

12  commit health care fraud and mail fraud, 18 U.S.C. § 1349; seventeen counts of health care fraud,

13  18 U.S.C. § 1347; and forfeiture, 18 U.S.C. §§ 981(a)(1)(C) & 982(a)(1), 28 U.S.C. § 2461(c).

14  *United States v. Lewis*, Cr. S-14-0045 MCE, ECF No. 1.  Lewis has been arraigned on the

15  indictment; a status conference is set for March 27, 2014.

16  II.  STANDARD

17      A party has no constitutional right to a stay of civil proceedings during the

18  pendency of a criminal investigation or prosecution nor does the Constitution protect a party from

19  being forced to choose between the consequences of asserting or waiving his Fifth Amendment

20  rights in the civil proceedings.  *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976); *Fed. Sav. &*

21  *Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989) ("*Molinaro*").  Even so, after

22  considering "the particular circumstances and competing interests involved in the case," a court

23  has discretion either to stay the entire proceeding or fashion some other, less drastic way to

24  protect a party's Fifth Amendment rights.  *Keating v. Office of Thrift Supervision*, 45 F.3d 322,

25  324 (9th Cir. 1995); *see also eBay, Inc. v. Digital Point Solutions, Inc*., No. C 08-4052 JF (PVT),

26  2010 WL 702463, at *5 (N.D. Cal. Feb. 10, 2010) (considering plaintiff's proposed alternatives to

27  a stay, but ultimately denying the stay); *In re CFS-Related Secs. Fraud Litig*., 256 F. Supp. 2d

28  1227, 1236 (N.D. Okla. 2003) ("A general stay is just one of several procedures available.  Other

4

1    options may be utilized in lieu of imposing a stay.  These alternate tools include the imposition of

2    protective orders, sealed interrogatories, a stay for a finite period of time, or a stay limited to a

3    specific subject matter.").

4              In considering whether to stay the proceedings, the court "should consider 'the

5    extent to which the defendant's fifth amendment rights are implicated.'"  *Keating*, 45 F.3d at 324

6    (quoting *Molinaro*, 889 F.2d at 902) (lack of capitalization as in original).  In addition, the court

7    should consider the following factors:

8              (1) the interest of the plaintiffs in proceeding expeditiously with
       this litigation or any particular aspect of it, and the potential
9              prejudice to the plaintiffs of a delay; (2) the burden which any
       particular aspect of the proceedings may impose on defendants;
10             (3) the convenience of the court in the management of its cases, and
       the efficient use of judicial resources; (4) the interests of persons
11             not parties to the civil litigation; and (5) the interest of the public in
       the pending civil and criminal litigation.

12

13   *Id*. at 325.

14             Although most cases consider a defendant's request to stay civil proceedings, a

15   plaintiff is not absolutely barred from seeking a stay of an action he filed.  Nevertheless, as a

16   general rule, "[t]he plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to

17   gain an unequal advantage against the party he has chosen to sue" because "a civil plaintiff has no

18   absolute right to both his silence and his lawsuit."  *Wehling v. Columbia Broad. Sys*., 608 F. 2d

19   1084, 1087, 1088 (5th Cir. 1980) (*"Wehling I"*).  If a court concludes a plaintiff's request to stay

20   the case he has filed should be granted, the court must be careful not to enter an "expansive stay"

21   but rather focus only on the discovery that exposes the party to a risk of self-incrimination.

22   *Wehling v. Columbia Broad. Sys.*, 611 F.2d  1026, 1027 (5th Cir. 1980) (*"Wehling II"*).  The

23   court recognizes that in this case Lewis and the Corporation are not only plaintiffs but are

24   counterdefendants in the Fund's counterclaim alleging RICO violations and fraud.  Given the

25   counterclaims, the court declines to resolve the parties' competing positions on the question

26   whether plaintiff was forced to file when he did because of the statute of limitations.  Moreover,

27   as *Wehling I* recognizes, even a plaintiff may seek a stay under limited circumstances.

28   /////

                                             5

1    III.  ANALYSIS

2           A.  Plaintiffs' Fifth Amendment Rights/The Burden From Proceeding

3                  "When simultaneous civil and criminal proceedings involve 'the same or closely

4    related facts,' the Fifth Amendment concerns may be sufficient to warrant a stay."  *eBay*, 2010

5    WL 702463, at *3 (quoting *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007)).

6                  There is overlap between the criminal charges and the counterclaim:  the *Lewis*

7    indictment identifies twelve patients on whom Lewis allegedly performed unnecessary dental

8    work, two of whom are named in the counterclaim in this case.   Indictment at 18-23 &

9    Counterclaim at 13 (patients R.I. and C.M.).   In addition, the conspiracy count describes a

10   scheme to defraud the Plan by billing for services not performed or performed but unnecessary

11   and excessive, Indictment at 4, and the Counterclaim at 3 ¶ 9.

12                 Nevertheless, Lewis is not the only plaintiff/counterdefendant, a fact plaintiffs do

13   not address until their reply:  the motion discusses the Fifth Amendment implications of the

14   investigation as though Lewis alone was involved.  It is well settled, however, that the

15   Corporation has no Fifth Amendment rights and that Lewis can be compelled to produce

16   corporate records in his capacity as corporate representative.  *Braswell v. United States*, 487 U.S.

17   99, 104-10 (1988).

18                 Also only in the reply do plaintiffs argue that the corporation is dissolved[1] and

19   that, somehow, Lewis's (former) license and the professional and specialized nature of the

20   practice means he alone will be able to provide the requested records, rendering this action of

21   production testimonial.  Plaintiffs do not support this argument with citation to any authority.

22                 It is true that the act of production may have testimonial aspects.  *See, e.g., United

23   States v. Sideman & Bancroft, LLP*, 704 F.3d 1197, 1201 (9th Cir. 2013).  However, in *Braswell*,

24   the Supreme Court said "the custodian's act of production is not deemed a personal act, but rather

25   an act of the corporation.  Any claim of Fifth Amendment privilege asserted by the agent would

26   be tantamount to a claim of privilege by the corporation—which of course possesses no such

27   _____

28          [1] The court takes notice of the fact that the California Secretary of State's website lists the
     corporation's status as "active."

                                                    6

1   privilege." *Braswell,* 487 U.S. at 110; *Bellis v. United States*, 417 U.S. 85, 90 (1974) ("[T]he

2   papers and effects which the privilege protects must be the private property of the person

3   claiming the privilege, or at least in his possession in a purely personal capacity") (citation &

4   internal quotation marks omitted).  It does not matter "how small the corporation may be" or if it

5   has been dissolved: the corporation's records do not thereby become personal records.  *Braswell*,

6   487 U.S. at 100; *Bellis*, 417 U.S. at 96 n.3 (stating that "the dissolution of a corporation does not

7   give the custodian of corporate records any greater claim to the Fifth Amendment privilege")

8   (citation & internal quotation marks omitted); *United States v. Feng Juan Lu*, 248 F. App'x 806,

9   808 (9th Cir. 2007) (recognizing that a defendant's business documents were not personal for

10   Fifth Amendment purposes "because she clearly intended the businesses to be separate from her

11   in the event of a lawsuit"); *United States v. Amato*, 450 F.3d 46, 52 (1st Cir. 2006) (a defendant's

12   choice to incorporate carries responsibilities of corporate identity, including the production of

13   subpoenaed records).  When asked at hearing, plaintiffs conceded they have no California

14   authority suggesting that corporate records become personal if and when a corporation is

15   dissolved.

16          Plaintiffs also contend the Fund is seeking some of Lewis's personal banking

17   records, the production of which will have testimonial aspects.  The Fund cites to *United States v.*

18   *Bright*, 596 F.3d 683 (9th Cir. 2010) to argue there is no potential for incrimination when a party

19   seeks records the government already has.  In *Bright*, the Ninth Circuit said that "where '[t]he

20   existence and location of the papers is a foregone conclusion and the [party] adds little or nothing

21   to the sum total of the Government's information by conceding that he in fact has the papers,'"

22   requiring production "does not touch upon constitutional rights."  *Id*. at 692 (quoting *Fisher v.*

23   *United States*, 425 U.S. 391, 411 (1976)).  The court need not determine at this stage of the

24   proceedings whether the exception applies to parties other than the government that seek the

25   production of records or whether the act of producing personal bank records might be deemed

26   testimonial.  Given the Fund's awareness that Delta was sending checks to plaintiffs, this aspect

27   of the claimed privilege provides little support for the requested stay.  *See, e.g.*, ECF No. 28-3 at

28   15 (Remittance Advice form from Delta Dental to David M. Lewis DMD).

1    Finally plaintiffs argue that a corporation will be unable to defend itself if all its

2   officers assert their Fifth Amendment rights.  They have not shown, however, that Lewis is the

3   only corporate officer or that other corporate officers and/or employees will or legitimately could

4   assert Fifth Amendment rights in response to discovery.

5    As Lewis has Fifth Amendment rights that may be implicated during discovery,

6   this factor favors a stay.

7    B.   The Fund's Interest in Expeditious Litigation

8    The Fund argues a stay will impede its ability to investigate whether more of the

9   approximately $2 million paid to Lewis was based on improper billing or unnecessary

10   procedures.  ECF No. 30 at 5.  It argues it will need to obtain dental records and submit them to a

11   forensic dental expert for review, a time-consuming process.  *Id.*; *see also In re CFS*,

12   256 F. Supp. 2d at 1239 (stating a party's interest in a speedy discovery process is heightened in

13   complex litigation, which must proceed efficiently).  Plaintiffs suggest that the resolution of the

14   criminal case may streamline discovery.  ECF No. 25 at 8.  However, as no criminal case has

15   been filed or resolved, this argument is unavailing.

16    Courts have also recognized that a stay may impact a party's ability to collect any

17   civil judgment it might recover, a real concern in this case as plaintiffs' counsel has identified five

18   civil actions pending against plaintiffs in Sacramento County Superior Court.  *Id.*; *Arries v. Univ.*

19   *OB/GYN, LLC.*, No. CV 10-08219-PCT-NVW, 2012 WL 896355, at *2 (D. Ariz. Mar. 16, 2012)

20   Decl. Craig Farmer, ECF No. 28-3 ¶ 2.  Moreover, the fees plaintiffs are paying for civil and

21   criminal representation continue to drain assets that could be used to satisfy any judgment.

22    Plaintiffs argue this factor applies only when there is evidence of active

23   concealment, but cite no binding authority so restricting this court's consideration.  This factor

24   weighs against any stay.

25    C.   The Efficient Use of Judicial Resources

26    The court has an interest in managing its caseload efficiently.  *eBay*, 2010 WL

27   702463, at *6.   In light of the indictment, the potentially indefinite nature of any stay implicates

28   this court's interest in managing its docket and weighs against the stay.  *See In re CFS*, 256 F.

8

1   Supp. 2d at 1242 (rejecting argument that resolution of criminal case might streamline civil

2   issues, finding it "unrealistic to rely upon fortuitous events to manage its docket") (citation &

3   internal quotation marks omitted).

4        D.  Interests of Third Parties

5             The Fund has presented evidence that the employers' premium and contribution

6   rates and the employees' share of those rates are determined by the amount of self-insured claims

7   paid out of the Fund's assets.  Decl. of Marena Henne, ECF No. 31 ¶ 3.  Given the possibility

8   these rates might be reduced if the Fund recoups substantial assets from plaintiffs, the interest of

9   Fund members weighs against a stay.

10             Plaintiffs counter that pursuing discovery might impact the rights of the plaintiff

11   Corporation's employees, who might assert their Fifth Amendment rights in response to

12   discovery.  It is unclear how the employees' rights will be negatively impacted, particularly if

13   their assertion of the privilege is honored.

14             This factor weighs against a stay.

15        E.  The Public Interest

16             Plaintiffs argue the public's interest is served by the protection of Fifth

17   Amendment rights, while the Fund contends the public's interest is best served by a speedy

18   resolution of the instant litigation.  ECF No. 28-1 at 10.  This factor is essentially neutral.

19             Although most of the *Keating* factors do not favor a stay, the application of this

20   test is not mechanical. Two things in particular inform the resolution of the instant motion:  the

21   identity between the counterclaim and the criminal investigation on one hand and the Fund's need

22   to analyze dental records.  Should the Fund be allowed to question Lewis, his Fifth Amendment

23   rights will almost certainly be implicated.  However, it is likely that the Fund's analysis of the

24   dental records will shape the questions it will pose to Lewis in interrogatories and at a deposition.

25   Given that the analysis of the records will take some period of time, the Fund's interest in

26   questioning Lewis guided by the results of that analysis will not be unduly damaged by a stay of

27   any questions directed to Lewis.  A six-month stay is not warranted, however, given Lewis's

28   vague showing supporting the time sought.

IT IS THEREFORE ORDERED:

1. Plaintiffs' motion for a stay of discovery is granted for a period of three months from the date of this order, to the extent that during that time defendants shall not serve interrogatories on or attempt to depose plaintiff Lewis;

2. Plaintiffs' motion for a stay of discovery is denied in all other respects; and

3. Plaintiffs are directed to file a status report within three months of the date of this order, providing detailed information about the progress of the criminal case.

Dated: March 13, 2014.

_____
UNITED STATES DISTRICT JUDGE